UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MARTIN SILVER,

Defendant.

**SUPERSEEDING INFORMATION**

S1 20 Cr. 360 (AKH)

**COUNT ONE**
**(Conspiracy to Commit Investment Adviser Fraud, Securities Fraud, and Wire Fraud)**

The United States Attorney charges:

**IIG and the Defendant**

1. At all times relevant to this Information, the International Investment Group, LLC ("IIG") was an investment adviser registered with the U.S. Securities and Exchange Commission ("SEC"). IIG was a New Jersey limited liability company founded in 1994 with its principal place of business in New York, New York. IIG provided investment management and advisory services, including for three private funds that it operated: (1) the IIG Trade Opportunities Fund N.V. ("TOF"); (2) the IIG Global Trade Finance Fund, Ltd. ("GTFF"); and (3) the IIG Structured Trade Finance Fund, Ltd. ("STFF"). IIG also advised the Venezuela Recovery Fund ("VRF"), a fund that managed the remaining assets of a failed Venezuelan bank whose liquidation was overseen by the Central Bank of Curacao (VRF, together with TOF, GTFF, and STFF,

the "IIG Funds"). In March 2018, IIG reported to the SEC that it had approximately $373 million in assets under management.

2. MARTIN SILVER, the defendant, and a co-conspirator not named as a defendant herein ("CC-1"), co-founded IIG. SILVER was a Managing Partner and the Chief Operating Officer of IIG. CC-1 was a Managing Partner and the Chief Investment Officer of IIG.

**Background on IIG's Trade Finance Loans**

3. IIG advertised itself as a specialty finance group involved in the financing of global trade transactions and specializing in providing customized financing solutions to small and medium-sized merchants, traders, and processors through trade finance loans. IIG's principal investment advisory strategy, including with respect to the IIG Funds, was investing in trade finance loans that it originated.

4. Trade finance loans are used by small and medium-sized companies, typically exporters and importers, to facilitate international trade and commerce. IIG's purported expertise was in trade finance loans to borrowers located in Central or South America, and in a variety of industries, with a stated focus on "soft commodities," such as coffee; agriculture; aquaculture, such as fishing; and other food products. IIG's trade finance loans were purportedly secured by collateral, such as the underlying traded goods, assets held by the borrowers, or expected payments by third parties.

5. Investments in TOF, STFF, and GTFF were marketed to institutional investors, such as pension funds, hedge funds, and insurers. In offering memoranda and communications with investors, IIG advertised strict risk controls, such as promises to use diligence to carefully select borrowers or issuers with trusted management and marketable assets, and portfolio concentration limits based on borrower, developing country, and industry.

6. IIG purported to value the trade finance loans in the IIG Funds on a regular basis. IIG and, in turn, MARTIN SILVER, the defendant, received a performance fee with respect to the IIG Funds, as well as a management fee, which was calculated as a percentage of the assets under management held in the Funds.

**Overview of the Conspiracy**

7. From at least in or about 2007 through in or about 2019, MARTIN SILVER, the defendant, conspired to defraud investors in IIG-managed funds by (i) overvaluing distressed loans in the IIG Funds, (ii) falsifying paperwork to create a series of fake loans that were classified, fraudulently, as positively performing loans, and to otherwise hide losses, (iii) selling overvalued and fake loans to a collateralized loan obligation trust and new private funds established and advised by IIG, and (iv) using the proceeds from those fraudulent sales to generate liquidity required to pay off earlier investors in a Ponzi-like manner.

**Statutory Allegations**

8. From at least in or about 2007 through in or about August 2019, in the Southern District of New York and elsewhere, MARTIN SILVER, the defendant, CC-1, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, (1) investment adviser fraud, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17, (2) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5, and (3) wire fraud, in violation of Title 18, United States Code, Section 1343.

9. It was a part and object of the conspiracy that MARTIN SILVER, the defendant, while an investment adviser, and others known and unknown, willfully and knowingly would and did use the mails and other means and instrumentalities of interstate commerce, directly and indirectly, (a) to employ a device, scheme, and artifice to defraud clients and prospective clients; (b) to engage in a transaction, practice, and course of business which operated as a fraud and deceit upon clients and prospective clients; and (c) to engage in an act, practice, and course of business which was fraudulent, deceptive, and manipulative, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17.

10. It was further a part and object of the conspiracy that MARTIN SILVER, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

11. It was further a part and object of the conspiracy that MARTIN SILVER, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs,

signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

Overt Acts

12. In furtherance of the conspiracy and to effect its illegal objects, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On or about January 18, 2018, CC-1, while in New York, New York, signed an “Investment Valuation” for GTFF that was prepared for investors, certifying the valuation of loans in GTFF’s portfolio, including Defaulted Loans, Distressed Loans, and Fake Loans, at par for the period of December 2017, and stating that “the Investment Managers have reviewed the Fund’s portfolio and have confirmed that there are no loss provisions to be booked in this period.”

b. On or about January 25, 2018, MARTIN SILVER, the defendant, emailed IIG employees, copying CC-1, directing the employees to collect $363,375.14 in management and performance fees for GTFF, and $527,282.89 in management and performance fees for STFF, for the fourth quarter of 2017, and wrote: “[CC-1] and I spoke Friday and he is comfortable with all the final valuations for the 2 funds . . . Accordingly, please proceed with processing Q4 fees[.]”

(Title 18, United States Code, Section 371.)

**COUNT TWO**
**(Securities Fraud)**

The United States Attorney further charges:

13. The allegations contained in Paragraphs 1 through 7 of this Information are repeated, realleged, and incorporated by reference as though fully set forth herein.

14. From at least in or about 2007 through in or about August 2019, in the Southern District of New York and elsewhere, MARTIN SILVER, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances, in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, SILVER engaged in a scheme to (i) overvalue distressed loans in VRF, TOF, STFF, and GTFF, (ii) falsify paperwork to create a series of fake loans that were classified, fraudulently, as performing loans, (iii) sell

overvalued and fake loans to a collateralized loan obligation trust and new private funds established and advised by IIG, and (iv) use the proceeds from those sales to generate liquidity required to pay off earlier investors, through fraudulent misrepresentations and omissions, thereby also causing IIG to receive management and performance fees to which it was not entitled.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

**COUNT THREE**
**(Wire Fraud)**

The United States Attorney further charges:

15. The allegations contained in Paragraphs 1 through 7 of this Information are repeated, realleged, and incorporated by reference as though fully set forth herein.

16. From at least in or about 2007 through in or about August 2019, in the Southern District of New York and elsewhere, MARTIN SILVER, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, SILVER engaged in a scheme to (i)

overvalue distressed loans in VRF, TOF, STFF, and GTFF, (ii) falsify paperwork to create a series of fake loans that were classified, fraudulently, as performing loans, (iii) sell overvalued and fake loans to a collateralized loan obligation trust and new private funds established and advised by IIG, and (iv) use the proceeds from those sales to generate liquidity required to pay off earlier investors, thereby also causing IIG to receive management and performance fees to which it was not entitled, and employed the use of telephones, email communications, and other wire communications in connection with the scheme.

(Title 18, United States Code, Sections 1343 and 2.)

**FORFEITURE ALLEGATIONS AS TO COUNTS ONE THROUGH THREE**

17. As a result of committing one or more of the offenses alleged in Counts One through Three of this Information, MARTIN SILVER, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code Section 2461, any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Three of this Information.

Substitute Assets Provision

18. If any of the above-described forfeitable property, as a result of any act or omission by the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461, to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981(a)(1)(C);
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461.)

Audrey Strauss

AUDREY STRAUSS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

**- v. -**

**MARTIN SILVER,**

**Defendant.**

---

**INFORMATION**

(Title 15, United States Code, Sections 78j(b), 78ff, 80b-6 and 80b-17; Title 17, Code of Federal Regulations, Section 240.10b-5;
Title 18, United States Code, Sections 2, 371 and 1343.)

AUDREY STRAUSS
U.S. Attorney.

---