# **EXHIBIT A**

L4DVSILP

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,

 4              v.                        20 CR 360 (AKH)

 5  MARTIN SILVER,

 6              Defendant.                REMOTE VIDEOCONFERENCE
                                          (Plea)
 7  ------------------------------x

 8                                        New York, N.Y.
                                          April 13, 2021
 9                                        10:00 a.m.

10
    Before:
11
                      HON. ALVIN K. HELLERSTEIN,
12
                                          District Judge
13

14                          APPEARANCES

15
    AUDREY STRAUSS,
16       United States Attorney for the
         Southern District of New York
17  NEGAR TEKEEI
    DREW SKINNER
18  ALEXANDER ROSSMILLER
         Assistant United States Attorneys
19
    NOLA HELLER
20  BRAD BONDI
         Attorneys for Defendant
21

22  ALSO PRESENT:  DAYSHAWN BOSTIC, Pretrial Services

23

24

25
```

L4DVSILP

| | |
|---|---|
| 1 | (Remote videoconference) |
| 2 | (Case called) |
| 3 | MS. TEKEEI:  Good morning, your Honor. |
| 4 | Negar Tekeei, Bruce Skinner, and Alex Rossmiller, on |
| 5 | behalf of the United States. |
| 6 | MS. HELLER:  Good morning, your Honor. |
| 7 | It's Nola Heller and Brad Bondi, on behalf of |
| 8 | Mr. Silver, who's here with us. |
| 9 | MR. BONDI:  Good morning, your Honor. |
| 10 | THE COURT:  Good morning to both -- to all of you, all |
| 11 | three and all two. |
| 12 | Give me a moment please. |
| 13 | (Pause) |
| 14 | THE COURT:  Okay.  Mr. Silver, I understand that |
| 15 | you're interested to change your plea from not guilty to |
| 16 | guilty; is that correct? |
| 17 | THE DEFENDANT:  Yes, your Honor. |
| 18 | MS. TEKEEI:  Your Honor, I'm so sorry.  I don't mean |
| 19 | to interrupt, but we're here for a presentment and the |
| 20 | first-time filing of charges against Mr. Silver, who is also |
| 21 | entering a guilty plea today pursuant to the agreement that was |
| 22 | transmitted to your Honor's chambers yesterday. |
| 23 | THE COURT:  Thank you. |
| 24 | Let's start with the CARES Act. |
| 25 | So we are doing this by videoconference. |

L4DVSILP

|     |                                                               |
|-----|---------------------------------------------------------------|
| 1   | Ordinarily, we would be doing it in court.  And I'd be        |
| 2   | on the bench and in my robe, and you would be with your       |
| 3   | attorney down below, and the U.S. Attorney would be there.  But |
| 4   | because of the pandemic and the inadvisability of having so   |
| 5   | many people gather in one place, Congress has authorized us to |
| 6   | conduct proceedings virtually, among them by videoconference. |
| 7   | So that's why we're here today.                               |
| 8   | You consent to this proceeding, Mr. Silver?                   |
| 9   | THE DEFENDANT:  Yes, I do, your Honor.                        |
| 10  | THE COURT:  I find it's in the interest of justice to         |
| 11  | proceed, so we can take Mr. Silver's plea and move the case   |
| 12  | along.  All right.  That's the CARES Act.                     |
| 13  | Second, we need to arraign Mr. Silver.                        |
| 14  | And Brigitte, do you want to do that.                         |
| 15  | THE DEPUTY CLERK:  You are Martin Silver?                     |
| 16  | THE DEFENDANT:  Yes, I am.                                    |
| 17  | THE DEPUTY CLERK:  Have you signed this waiver of             |
| 18  | indictment?                                                   |
| 19  | THE DEFENDANT:  Yes, I have.                                  |
| 20  | THE DEPUTY CLERK:  Before you signed it, did you             |
| 21  | discuss it with your attorney?                                |
| 22  | THE DEFENDANT:  Yes, I did.                                   |
| 23  | THE DEPUTY CLERK:  Did your attorney explain it to            |
| 24  | you?                                                          |
| 25  | THE DEFENDANT:  Yes, they have.                               |

L4DVSILP

 1            THE DEPUTY CLERK:  Do you understand what you are

 2    doing?

 3            THE DEFENDANT:  Yes, I do.

 4            THE DEPUTY CLERK:  Do you understand that you are

 5    under no obligation to waive indictment?

 6            THE DEFENDANT:  Yes.

 7            THE DEPUTY CLERK:  Do you understand that if you do

 8    not waive indictment, if the government wants to prosecute you,

 9    they will have to present this case to a grand jury, which may

10    or may not indict you?

11            THE DEFENDANT:  Yes, I understand.

12            THE DEPUTY CLERK:  Do you understand that by signing

13    this waiver of indictment, you have given up your right to have

14    this case presented to a grand jury?

15            THE DEFENDANT:  Yes, I do.

16            THE DEPUTY CLERK:  Do you understand what a grand jury

17    is?

18            THE DEFENDANT:  Yes.

19            THE DEPUTY CLERK:  Have you seen a copy of the

20    information?

21            THE DEFENDANT:  Yes.

22            THE DEPUTY CLERK:  Do you waive its public reading?

23            THE DEFENDANT:  Yes.

24            THE DEPUTY CLERK:  How do you plead?

25            MS. HELLER:  Your Honor, today Mr. Silver will be

L4DVSILP

1    entering a plea of guilty.  But I guess for the present moment,

2    we'll enter a plea of not guilty.  That should be immediately

3    changed at the end of the proceeding.

4              THE COURT:  All right.  I understand.

5              Mr. Silver, as I said before, in order for me to

6    accept a plea of guilty, I have to put you under oath and

7    examine you and, on the basis of that examination, make

8    findings whether your plea is voluntary, whether you understand

9    the consequences, and if there is an independent basis-in-fact

10   to support the plea.

11             You're under oath; so what you tell me must be the

12   truth, the whole truth, and nothing but the truth.  If you fail

13   to do that, you are exposed to additional penalties.

14             Shall we proceed?

15             THE DEFENDANT:  Yes, your Honor.

16             (Defendant sworn)

17             THE DEPUTY CLERK:  Please state your full name for the

18   record.

19             THE DEFENDANT:  It's Martin S. Silver.

20             THE COURT:  How old are you, Mr. Silver?

21             THE DEFENDANT:  63 years old.

22             THE COURT:  Are you married?

23             THE DEFENDANT:  Yes, I am, your Honor.

24             THE COURT:  Children?

25             THE DEFENDANT:  Yes, your Honor.

L4DVSILP

1          THE COURT:  You're 63 years old, you're married.

2          And how many children do you have?

3          THE DEFENDANT:  I have two children; a son who's 28,

4     and my daughter is 34.

5          THE COURT:  Any dependents?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Are you a citizen of the United States?

8          THE DEFENDANT:  Yes, I am, your Honor.

9          THE COURT:  Tell me about your education.

10          Did you go to college?

11          THE DEFENDANT:  Yes.  I attended City University of

12     New York, Brooklyn College, and I graduated with a bachelor of

13     science degree in 1979.

14          THE COURT:  All right.  There's a horn blowing

15     outside.

16          Coming into today, have you had any narcotics or

17     medicines or any other substance that will blur your thinking?

18          THE DEFENDANT:  No, I have not, your Honor.

19          THE COURT:  You're clear-minded?

20          THE DEFENDANT:  Yes, I am, your Honor.

21          THE COURT:  Have you told everything about your case

22     to your attorneys?

23          THE DEFENDANT:  Yes, I have, your Honor.

24          THE COURT:  Are you satisfied with their services?

25          THE DEFENDANT:  Absolutely, your Honor.

L4DVSILP

1          THE COURT:  Are you offering to plead guilty of your

2     own free will or because anyone has -- well, let me withdraw

3     that.  Has anyone made any promises to you to cause you to want

4     to plead guilty?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  Has anyone threatened you in any way?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  Are you offering to plead guilty of your

9     own free will because you think it's the best thing for you in

10     the circumstances?

11          THE DEFENDANT:  Yes, I do, your Honor.  Yes.

12          THE COURT:  Now, do you understand that as a defendant

13     in a criminal case, you are presumed innocent; you can't be

14     found guilty unless the government proves guilt beyond a

15     reasonable doubt and to the satisfaction unanimously of a jury?

16          Do you understand that?

17          THE DEFENDANT:  Yes, I do, your Honor.

18          THE COURT:  And at a trial, you'd have the benefit of

19     counsel.  If you couldn't afford a lawyer, we'd provide a

20     lawyer free of charge.  Do you understand that?

21          THE DEFENDANT:  Yes, I do, your Honor.

22          THE COURT:  And with the help of a lawyer, you can

23     confront all witnesses, you can cross-examine them, you can

24     require any witness having favorable information to come to the

25     trial, whether they wanted to or not.  And you, yourself, could

L4DVSILP

1    testify if you wished to testify; but if you didn't want to,

2    you wouldn't have to, and no inference could be drawn against

3    you.  Are you aware of all of those rights?

4              THE DEFENDANT:  Yes, I do, your Honor.  Yes, I am.

5              THE COURT:  If you plead guilty, you authorize me to

6    sentence you the same way as I would be authorized if a jury

7    brought in a verdict of guilt against you.

8              Do you understand that as well?

9              THE DEFENDANT:  Yes, I do, your Honor.

10             THE COURT:  Okay.  Would the government discuss the

11   plea agreement, please, with Mr. Silver to make sure he

12   understands everything in it.

13             MS. TEKEEI:  Yes, of course, your Honor.

14             Pursuant to the terms of the plea agreement that the

15   parties have entered, Mr. Silver will be pleading guilty to

16   three counts of the superseding information.

17             Count One of the superseding information charges

18   Mr. Silver with conspiracy to commit investment adviser fraud,

19   securities fraud, and wire fraud.

20             Count Two of the superseding information charges

21   Mr. Silver with securities fraud.

22             And Count Three of the information -- superseding

23   information charges Mr. Silver with wire fraud.

24             In connection with and pursuant to the terms of the

25   plea agreement -- and this is on page 2 that I am summarizing,

L4DVSILP

your Honor, page 2 of the agreement -- Mr. Silver is obligated
to truthfully and completely disclose all information with
respect to the activities themselves and others.

(Inaudible)

THE COURT:  Could you go back a little bit, you were
cut off.

MS. TEKEEI:  No problem.

Your Honor, I'm simply summarizing the terms that are
important on page 2.

THE COURT:  Before you do that, since you mentioned
the three crimes, what are the statutory penalties attached to
each?

MS. TEKEEI:  Of course.

Your Honor, with respect to Count One, that carries a
maximum term of imprisonment of five years, and a maximum term
of supervised release of three years, as well as a maximum fine
of the greatest of $250,000, or twice the gross pecuniary gain
derived from the offense or twice the gross pecuniary loss to
persons other than the defendant resulting from the offense,
and a mandatory $100 special assessment.

Count Two carries with it a maximum term of
imprisonment of 20 years, a maximum term of supervised release
of three years, and the same maximum fine -- I'm sorry,
(indiscernible) a maximum fine of the greatest of $5 million,
twice the gross pecuniary gain derived from the offense or

L4DVSILP

1    twice the gross pecuniary loss to persons other than the

2    defendant resulting from the offense, as well as a mandatory

3    $100 special assessment.

4            Count Three of the information, which charges the

5    defendant with wire fraud, carries a maximum term of 20 years

6    of imprisonment, a maximum term of supervised release of three

7    years, a maximum fine of the greatest of $250,000, twice the

8    gross pecuniary gain derived from the offense or twice the

9    gross pecuniary loss to persons other than the defendant

10   resulting from the offense, as well as a $100 mandatory special

11   assessment.

12           And combined, the total maximum term of imprisonment

13   on Counts One, Two, and Three is 45 years.

14           THE COURT:  And with regard to the supervised release,

15   they come with terms and conditions, which, if violated, would

16   lead to a hearing and the possibility of more jail time.

17           Do you understand all that, Mr. Silver?

18           THE DEFENDANT:  Yes, I do, your Honor.

19           THE COURT:  All right.

20           Would you proceed to discuss the sentencing

21   guidelines.

22           MS. TEKEEI:  Your Honor, under the terms of this

23   agreement, the parties have not outlined the agreed-upon -- or

24   an agreed-upon sentencing guidelines range.  Let's just

25   summarize very briefly the terms on pages 2 and 3 of the plea

L4DVSILP

1    agreement.

2              In summary -- and this is memorialized in more detail,

3    and I'm happy to go into it if the Court requires.  But in

4    summary, Mr. Silver has agreed to cooperate fully with the

5    government.  In exchange for his truthful and complete

6    cooperation, and in exchange for his abiding by all the terms

7    of this plea agreement, at sentencing, the government will

8    inform the Court and the probation office regarding the nature

9    and extent of his cooperation.  Among other information, if we

10   determine -- and whether we determine that he has provided

11   substantial assistance in the investigation and prosecution of

12   others, and has fully complied with the conditions of his plea

13   agreement, then we will file a motion pursuant to Section 5K1.1

14   of the sentencing guidelines, requesting that the Court

15   sentence him in light of the factors set forth in Section

16   5K1.1.

17             THE COURT:  Do you understand, Mr. Silver, that

18   whether you can get the benefit of Section 5K1.1 requires the

19   government to give me a letter attesting to your cooperation.

20   You may be thinking you're cooperating, and the government may

21   think you're not.  And I can't do anything about it unless the

22   government gives me the letter.  So it's possible that you'll

23   be disappointed.  Do you understand that?

24             THE DEFENDANT:  Yes, I do, your Honor.

25             THE COURT:  Once you plead guilty, you are bound.  I'm

L4DVSILP

1   not.  I'm not part of this agreement.  I have to make my own

2   decision where the sentencing guidelines apply and how much, if

3   any, I should give credence to the cooperation at sentencing.

4          All this is to say that you could be disappointed by

5   what I do, but your disappointment will not be grounds for

6   withdrawing your plea of guilty once I accept it.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I do, your Honor.

9          THE COURT:  Are there other relevant provisions of the

10  cooperation letter that should be discussed?

11         MS. TEKEEI:  No, your Honor.  Unless Mr. Silver or his

12  counsel would like to highlight any of the provisions, not from

13  the government.

14         MS. HELLER:  No, your Honor, I don't have anything.

15         THE COURT:  Mr. Silver, do you have any questions?

16         THE DEFENDANT:  No, I don't, your Honor.

17         THE COURT:  Okay.  Now, would the government discuss,

18  please, the elements of the crimes and how the government would

19  go about proving the crimes.

20         MS. TEKEEI:  Yes.  Thank you, your Honor.

21         As I described earlier, Count One of the superseding

22  information charges Mr. Silver with conspiracy to commit

23  investment adviser fraud, securities fraud, and wire fraud.

24  That conspiracy has three elements.

25         First, the existence of a conspiracy, that is the

L4DVSILP

existence of an agreement or understanding to commit unlawful

object of the charged conspiracy.  Here, there were three

objects to commit:

One, investment adviser fraud; two, securities fraud;

and third, wire fraud.

The second element is that the defendant willingly and

knowingly became a member of the conspiracy.

And the third element is that any one of the

co-conspirators in the conspiracy knowingly committed at least

one overt act in the Southern District of New York, in

furtherance of the conspiracy, during the life of the

conspiracy.

I will go into the securities fraud and wire fraud,

the elements of the object of the conspiracy, in a moment,

because the elements are the same as the substantive offenses

in Counts Two and Three.  But with respect to the investment

adviser fraud, object of the conspiracy, those elements are:

First, that the defendant was an investment adviser;

second, that the defendant did one of the following:

A.  Employed a device, scheme, or artifice to defraud

an actual or prospective investor advisory client;

B.  Engaged in a transaction, practice, or course of

business which operated as a fraud and deceit upon those

investment advisory clients or prospective investment advisory

clients;

L4DVSILP

1          Or C.  Engaged in an act, practice, and course of

2    business that was fraudulent, deceptive, and manipulative.

3          The third element is that the defendant devised or

4    participated in such an alleged device, scheme, or artifice to

5    defraud, or engaged in the transaction, practice, or course of

6    business knowingly, willfully, and with the intent to defraud.

7          And fourth, that the defendant employed a device,

8    scheme, or artifice to defraud, or engaged in a transaction,

9    practice, or course of business by use of the mails or an

10   instrumentality of interstate commerce.

11         So now I'll go into Count Two, securities fraud, and

12   the elements of securities fraud, which have three.

13         In connection with -- the first being in connection

14   with the purchase or sale of securities, the defendant did any

15   one or more of the following:

16         A.  Employed a device, scheme, or artifice to defraud;

17         B.  Made an untrue statement of a material fact or

18   omitted to state a material fact which made what was said under

19   the circumstances misleading;

20         Or C.  Engaged in an act, practice, or course of

21   business that operated or would operate as a fraud or deceit

22   upon a purchaser or seller.

23         Third -- I'm sorry, second, that the defendant acted

24   knowingly, willfully, and with the intent to defraud.

25         And third, that the defendant used or caused to be

L4DVSILP

1  used any means or instruments of transportation, communication

2  in interstate commerce at the facilities of a national

3  securities exchange or the use of the mails in furtherance of

4  the fraudulent conduct.

5          And finally, your Honor, Count Three of the

6  superseding information which charges wire fraud has three

7  elements:

8          First, that there was a scheme or artifice to defraud

9  or obtain money or property by false and fraudulent pretenses,

10  representations, or promises; second, that defendant knowingly

11  and willfully participated in the scheme or artifice to

12  defraud, with knowledge of its fraudulent nature and with

13  specific intent to defraud; and third, in the execution of that

14  scheme, the defendant used or caused the use of the interstate

15  or foreign wires.

16          And your Honor, with respect to venue, the government

17  would have to prove for each of these counts that there was an

18  act in furtherance of either the scheme to defraud or the

19  conspiracy here in the Southern District of New York.  And in

20  this case, the investment adviser, IIG, was located here in

21  Manhattan.  And Mr. Silver took various actions in furtherance

22  of the scheme from (indiscernible).  And in addition, there

23  were email communications and wire communications sent to and

24  from the Southern District of New York, in furtherance of the

25  charged offenses.

L4DVSILP

```
 1                 With respect --
 2            THE COURT:  Go ahead.  I'm sorry.  Go ahead.
 3            MS. TEKEEI:  No problem.
 4            I was just going to say, your Honor, with respect to
 5   the government's proof at trial, were this case to go to trial,
 6   the government would establish the defendant's guilt beyond a
 7   reasonable doubt by, among other things, email communications,
 8   loan and business records, and other documents related to the
 9   fraud, as well as witness testimony from individuals associated
10   with the investment adviser, IIG, and its (indiscernible).
11            And the evidence would show that the facts -- the
12   evidence would prove beyond a reasonable doubt the charges in
13   the information; but specifically, that, as a cofounder,
14   managing partner, and chief operating officer of IIG, which is
15   a registered investment adviser, from approximately 2007
16   through 2019, Mr. Silver conspired with others to defraud
17   investors in IIG-managed funds by overvaluing loans, creating
18   fake loans, transferring overvalued and fake loans between IIG
19   and advised funds, and using the proceeds from those fraudulent
20   sales to generate what would be required to pay off earlier
21   investors.
22            In furtherance of the fraud, Mr. Silver and his
23   co-conspirators sent emails, other foreign and interstate wire
24   communications with victims, borrowers, and others from the
25   Southern District of New York.
```

L4DVSILP

```
1          And the evidence would also show that this conduct was

2    in connection with the purchase and sale of securities; among

3    other things, a retail mutual fund, shares of IIG-advised funds

4    and obligations issued by a collateralized loan obligation that

5    were securities all involved.

6          THE COURT:  What was the magnitude of the fraud?

7          MS. TEKEEI:  Your Honor, as we stated in connection

8    with the plea proceeding of Mr. Silver's co-conspirator, which

9    is a matter of public record, it was in the hundreds of

10   millions of dollars.

11         THE COURT:  Was that the amount that was lost by

12   investors?

13         MS. TEKEEI:  Your Honor, forgive me, I can't remember

14   immediately the amount that we have estimated previously.  I

15   can find that very quickly with the Court's permission.

16         THE COURT:  Go ahead.

17         (Pause)

18         MS. TEKEEI:  Your Honor, I want to be careful about

19   answering your question.

20         THE COURT:  Order it in the sense of magnitude, order

21   of magnitude, the number doesn't have to be precise.

22         MS. TEKEEI:  Understood, your Honor.

23         It is in the range of 65 million to $150 million.

24         THE COURT:  $65 million to $100 million were lost?

25         MS. TEKEEI:  150.
```

L4DVSILP

| 1 | THE COURT: Say it again please. |
| 2 | MS. TEKEEI: It is in the -- the loss amount is in the |
| 3 | range of $65 million to $150 million. |
| 4 | THE COURT: And how many people lost this amount of |
| 5 | money? |
| 6 | MS. TEKEEI: There were multiple institutional |
| 7 | investors. And so it is an amount that is greater than ten. |
| 8 | THE COURT: Okay. Anything else you want to tell me |
| 9 | about the letter that you wrote to the government -- to the |
| 10 | defendant? |
| 11 | MS. TEKEEI: No, your Honor. |
| 12 | THE COURT: Okay. |
| 13 | Mr. Silver, you signed that agreement? |
| 14 | THE DEFENDANT: Yes, I have, your Honor. |
| 15 | THE COURT: I don't have it before me; I can only show |
| 16 | on my screen a picture. I can't pull up the document. But is |
| 17 | Mr. Silver's signature on it as of today? |
| 18 | THE DEFENDANT: Yes, your Honor. I don't know if you |
| 19 | can see this. |
| 20 | THE COURT: We'll mark that as Exhibit 1, and the |
| 21 | government will retain it, give me a copy marked Exhibit A for |
| 22 | trial -- Exhibit A for this proceeding. |
| 23 | Are there any questions you have, Mr. Silver, about |
| 24 | the descriptions made by the government? |
| 25 | THE DEFENDANT: No, your Honor. |

L4DVSILP

1          THE COURT:  Does defense counsel have any questions

2     about the proofs and the elements of the crimes?

3          MS. HELLER:  We do not, your Honor.  Thank you.

4          THE COURT:  Do you believe that the government can

5     prove a *prima facie* case against Mr. Silver?

6          MS. HELLER:  We do believe that, your Honor.

7          THE COURT:  Do you know of any defenses that could

8     trump those proofs?

9          MS. HELLER:  We don't, your Honor.

10          THE COURT:  Mr. Silver, are you offering to plead

11     guilty to each of the three counts because you believe that you

12     are, in fact, guilty of each of the three counts?

13          THE DEFENDANT:  Yes, I do, your Honor.

14          THE COURT:  Would you tell me what you did to make you

15     guilty of each of these three counts.  And if you have a

16     statement, work out with your lawyer (indiscernible).

17          THE DEFENDANT:  Yes, your Honor.

18          From approximately 2007 through 2019, in Manhattan and

19     elsewhere, together with --

20          THE COURT:  Excuse me.  Is that 2007 or 2017?

21          THE DEFENDANT:  Seven.  Seven, your Honor.

22          THE COURT:  2007.

23          THE DEFENDANT:  Through 2019, in Manhattan and

24     elsewhere, together with another person identified in the

25     information as Co-conspirator 1, and while acting as an

L4DVSILP

1    investment adviser, I intentionally and knowingly participated

2    in a scheme to overvalue distressed loans and IIG funds and

3    falsify paperwork to create a series of fake loans.

4            During the time period of the conspiracy, I came to

5    learn that some of these loans -- some of these overvalued and

6    fake loans were sold to a collateralized loan obligation trust.

7    Some of the proceeds from those sales were then used to pay off

8    earlier investors.

9            Through these and other actions, using interstate

10   wires and the mail, the scheme concealed the true value of IIG

11   funds from investors, and transferred fake and overvalued loans

12   between funds for which IIG provided investment advisory

13   services, at the same time receiving management and performance

14   fees.

15           This conduct occurred in connection with the purchase

16   and sale of securities, including IIG-advised funds and

17   securities issued by the collateralized loan obligation trust.

18           THE COURT:  You said you came to realize what was

19   happening.  Did you know it all along?  Did you know that there

20   were inflations made by your company of loans and assets from

21   2017 -- from 2007?  Excuse me.

22           MS. HELLER:  Your Honor, may we just have a moment?

23           THE COURT:  Yes.

24           (Pause)

25           THE DEFENDANT:  Your Honor, I was aware of some of

L4DVSILP

1    them at the onset; but then later on, I became aware of other

2    loans that were done by members -- Co-conspirator 1 and other

3    members of the IIG staff with regard to establishing additional

4    fake loans.  And so I only found out about some of them later

5    on.

6               THE COURT:  Were these loans and inflations --

7    withdrawn.

8               Were the inflations of these loans done at your

9    command?

10              THE DEFENDANT:  No, they were not.

11              THE COURT:  Who was in charge of that aspect of the

12   trip of the business?

13              THE DEFENDANT:  Co-conspirator 1 was the chief

14   investment officer and managed the credit team.

15              THE COURT:  Is that Mr. Hu?

16              THE DEFENDANT:  Yes, it is.  And members of his team.

17              THE COURT:  And were you and Mr. Hu essentially

18   partners?

19              THE DEFENDANT:  Yes, we are -- yes, we were.

20              THE COURT:  Did you know generally that Mr. Hu was

21   commanding the overstatement of the asset values?

22              THE DEFENDANT:  As I mentioned earlier, your Honor, I

23   knew of some at the onset, and then later came to know that

24   there were significantly more loans that were being overstated.

25              THE COURT:  Did you and Mr. Hu have an agreement to

L4DVSILP

1    overstate loans?

2              THE DEFENDANT:  Only with regard to the initial loans,

3    not with regard to subsequent loans.

4              THE COURT:  But when did you find out subsequently

5    that loans, after the initial loans, were being inflated in

6    value?

7              THE DEFENDANT:  It was perhaps 2000 -- your Honor, I

8    can't tell you definitively, but subsequent to 2014, and the

9    bulk of them subsequent to sometime during the second half of

10   2017.

11             THE COURT:  Did you do anything to discipline the

12   person who was creating those inflations?

13             THE DEFENDANT:  Your Honor, I made various attempts to

14   get -- to identify what the true values were, but was

15   unsuccessful.

16             THE COURT:  How did you try to do that?

17             THE DEFENDANT:  At various times I -- well, I met with

18   my co-conspirator's staff to try to identify what the true

19   values were.  I made various attempts to bring in a forensic --

20   to bring in forensic accountants to review the portfolios and

21   identify what the true values were.  And that was on several

22   occasions.  I also engaged -- an individual came in as a

23   consultant to try to assist in that, as well.  All of those

24   attempts -- all of those efforts were unsuccessful.

25             THE COURT:  What caused you to bring in the forensic

L4DVSILP

1    accountants and the consultant?

2            THE DEFENDANT:  I was -- well, with respect to the

3    forensics, I was attempting to identify what the true value

4    was, or was at that time with respect to various loans.  And

5    then with respect to the consultant, we ended up bringing him

6    in in order to maximize the value of the portfolios, look into

7    the various loans, and try to wind down each of the portfolios

8    to maximize the -- to maximize the amount that could repaid --

9    to be repaid to the investors.

10           THE COURT:  When were these false loans made?

11           Withdrawn.

12           When would this false inflation occur, start in 2007,

13   and you said you were aware of them.

14           THE DEFENDANT:  Yes, I was -- yes, I did, your Honor.

15           THE COURT:  And you said you were not aware that they

16   were continuing?

17           THE DEFENDANT:  No, no, I was aware that they were

18   continuing with respect to those initial loans.  I was not

19   aware that there were other loans in other portfolios

20   especially that were also at issue, your Honor.

21           THE COURT:  And when you did find out, did you

22   complain about it to anybody?

23           THE DEFENDANT:  Only internally, your Honor, not --

24   and I --

25           THE COURT:  Did you complain to Mr. Hu?

1          THE DEFENDANT:  Yes, I did, your Honor.

2          THE COURT:  What did he say?

3          THE DEFENDANT:  I can't -- your Honor, I can't tell

4     you specifically what he said, but essentially he ignored --

5          THE COURT:  To the best of your memory.

6          THE DEFENDANT:  He basically ignored -- he ignored any

7     of my pleas with him, as well as with his staff.

8          THE COURT:  Did you think of quitting?

9          THE DEFENDANT:  Yes, many times, your Honor.

10          THE COURT:  But you stayed on knowing that the

11     organization was continuing to inflate asset values in order to

12     obtain investors?

13          THE DEFENDANT:  At that time, your Honor,

14     respectfully, I didn't -- I didn't -- we were not soliciting

15     any additional funds.  What my attempts, you know, for many

16     years was to -- was to attempt to maximize a value that would

17     be repaid back to investors.  And all my efforts were -- you

18     know, for many years were towards that end, your Honor.  And I

19     felt that that was -- and -- and that -- I felt that that was

20     the -- I truly believed that investors would be best served by

21     my staying onboard and trying to do that, rather than just

22     leaving.

23          THE COURT:  I'm told that the amount of loss is

24     between $65 million and $150 million.  Was this attributable to

25     the loans at the outset or the loans throughout?

1          THE DEFENDANT:  A portion of that are attributable to

2     the loans at the onset; but I believe the vast majority would

3     be related to subsequent events, your Honor.

4          THE COURT:  Do you feel that you are responsible for

5     those loans at a time that you didn't know about them?

6          MS. HELLER:  Your Honor, can you give us one moment?

7          THE COURT:  Yes.

8          (Pause)

9          THE DEFENDANT:  Your Honor, I do take responsibility

10     certainly for the initial loans.  And -- and it was my company;

11     I did become aware of the fraudulent loans, so I do take

12     responsibility for those as well.

13          THE COURT:  You were 50 percent owner of the company?

14          THE DEFENDANT:  Yes, your Honor, it was 50-50.

15          THE COURT:  And is it your testimony that a large bulk

16     of this overinflation was done under the direction of Mr. Hu

17     and not -- and you didn't know anything about it at the time?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Did you know that the investments that

20     were coming into IIG were being used to pay off debts to other

21     previous investors?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Did you know that the purpose of obtaining

24     additional investors was to get funds to pay off the earlier

25     investors?

L4DVSILP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And did you know that all of this was done

3     in connection with the purchase of sale of securities?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Does the government have any comments or

6     questions?

7          MS. TEKEEI:  Your Honor, I think that this was implied

8     by what Mr. Silver said, but the Court asked Mr. Silver some

9     questions about whether he reported or complained about certain

10    of the activities that happened at least initially without his

11    knowledge.

12         The government would respectfully request that the

13    Court confirm with Mr. Silver that he did not raise those

14    fraudulent activities to law enforcement until it became in

15    connection with his current -- the events that led to his

16    current plea.

17         THE COURT:  I'm not sure I understand you completely.

18         Why don't you ask the questions.

19         MS. TEKEEI:  Sure.

20         And I can no longer see Mr. Silver; I just want to

21    make sure they are still on.

22         THE COURT:  Yes, they are on.

23         Repeat what you said.  I'll ask the questions.

24         MS. TEKEEI:  No problem.  I just wanted to --

25         THE COURT:  Go ahead.

L4DVSILP

1          MS. TEKEEI:  The question is that when Mr. Silver

2    became aware of additional fraudulent loans and overvalued

3    loans, whether he raised that fact with the authorities, law

4    enforcement authorities, at the time, and -- or continued to

5    participate in the scheme.

6          THE COURT:  What time period?  One minute, Mr. Silver.

7          What time period?

8          MS. TEKEEI:  I don't think he clarified exactly the

9    time period that he became aware of the additional fraudulent

10   activities, so I don't want to inject that fact into his

11   statement.  But at the point when he became aware, whether he

12   immediately notified law enforcement or I think, as he said, he

13   dealt with it or attempted to dealt with it internally.

14         THE DEFENDANT:  No, I did not inform law enforcement

15   or any other regulatory body.

16         MS. TEKEEI:  I have no further questions.

17         THE COURT:  He's saying that he tried to deal with it

18   internally to stop the practice and to try to make good to the

19   people who were defrauded.  Is that right, Mr. Silver?  Is that

20   what you're saying?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Does the government agree with that?

23         MS. TEKEEI:  We have no additional questions, your

24   Honor.

25         THE COURT:  Do you agree with what Mr. Silver just

L4DVSILP

1    said?

2              MS. TEKEEI:  It is our understanding that he did

3    attempt to deal with the fraudulent activities that he and his

4    co-conspirators engaged in internally; and that he did not

5    raise the fraud or the fake loans either to law enforcement or

6    to the victim investors until it became in connection with this

7    proceeding or the proffers that led to this proceeding, which

8    was well after the scheme -- which was during the time period

9    of the scheme, but toward its conclusion.

10             THE COURT:  Do you believe that the inflation that

11   occurred to your knowledge at the early period was wrong?

12             THE DEFENDANT:  Yes, I do, your Honor.

13             THE COURT:  Do you believe that you were wrong to have

14   participated in the inflation of assets as a means to overstate

15   the value of your company to obtain investments from investors?

16             THE DEFENDANT:  Yes, your Honor, I do.

17             THE COURT:  And I think you said that you're pleading

18   guilty because you believe you are, in fact, guilty.

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Does the government have anymore questions

21   for me to ask?

22             MS. TEKEEI:  We do not, your Honor.  Thank you.

23             THE COURT:  Does defense counsel?

24             MS. HELLER:  No, we do not, your Honor.

25             Thank you very much.

L4DVSILP

1          THE COURT:  Mr. Silver, I find that your pleas to each

2     of the three counts are voluntarily made; that you understand

3     the consequences; and that there is an independent

4     basis-in-fact to support each of the three pleas of guilty, one

5     plea of guilty to each of the three counts.  Accordingly, I

6     accept your plea of guilty to Counts One, Two, and Three of the

7     information.  And I instruct the clerk to enter the plea of

8     guilty to those counts.

9          What will be the control date for sentencing,

10    Ms. Jones?

11         THE DEFENDANT:  It has to be after October.

12         MS. TEKEEI:  Your Honor, my apologies for

13    interrupting.

14         The Court asked me whether we had any additional

15    questions.  I'm looking at my list, and I do not recall whether

16    Mr. Silver admitted to the forfeiture allegations that are in

17    the superseding information.  It's memorialized in the plea

18    agreement, but we just respectfully request that additional

19    items be handled now.

20         THE COURT:  How much is the obligation?

21         MS. TEKEEI:  Your Honor, we do not (indiscernible) yet

22    with respect to Mr. Silver, as our investigation is ongoing.

23    He is at least forfeiting the amounts related to a check that's

24    listed in the plea agreement to the amount of approximately $6

25    million that was made to the Venezuela Recovery Fund, in

L4DVSILP

1   addition to additional amounts that are proceeds traceable to

2   the offenses.  But we have not, with respect to Mr. Silver,

3   calculated that final amount.  It is a general allegation with

4   respect to the balance.

5           THE COURT:  Well, if I ask him how much he agrees to,

6   don't I have to give him an order of magnitude?

7           MS. TEKEEI:  Your Honor, that's not our understanding.

8           Pursuant to the forfeiture provision, it is sufficient

9   for him to admit to the forfeiture allegations.  And then in

10  connection with Mr. Silver's sentencing, he will present the

11  Court with an order of forfeiture for the Court to enter.

12          THE COURT:  Do you understand, Mr. Silver, that there

13  is a forfeiture aspect to this case?

14          THE DEFENDANT:  Yes, I do, your Honor.

15          THE COURT:  And that the government will be enabled to

16  forfeit that amount of your assets, which could be traceable

17  directly or indirectly to the illegal gains you've made?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  And do you agree to them?  Do you agree --

20          THE DEFENDANT:  Yes.

21          THE COURT:  -- performing these forfeiture acts?

22          THE DEFENDANT:  Yes, your Honor.

23          MS. TEKEEI:  Thank you, your Honor.

24          THE COURT:  Any further questions?

25          MS. TEKEEI:  No.  Thank you.

L4DVSILP

1          THE COURT:  Brigitte, let's get a control date for

2     Mr. Silver's sentencing.

3          THE DEPUTY CLERK:  Did I hear a mention of it had to

4     be after October?

5          MS. HELLER:  That would be our preference.  Yes,

6     Brigitte, Ms. Jones, that would be our preference.

7          THE DEPUTY CLERK:  That's good, Judge?

8          THE COURT:  I don't have any --

9          THE DEPUTY CLERK:  All right.  So November --

10          THE COURT:  Just a minute.

11          The date is not going to be the actual date of

12     sentencing.

13          THE DEFENDANT:  Understood, your Honor.

14          THE COURT:  If we're going to give a date that late,

15     we should consider the real date of sentencing, shouldn't we?

16     Otherwise, we would find a date three months off, with the

17     expectation that it will be postponed.

18          MS. HELLER:  We would defer to the government then,

19     your Honor, on that.

20          MS. TEKEEI:  Your Honor, it is the government's

21     preference that the Court set a control date for six months

22     from now.  And we will provide the Court with a further update

23     as to whether we need to push that back closer to the six-month

24     time frame.

25          THE COURT:  So you want a date six months hence.

L4DVSILP

1          THE DEPUTY CLERK:  I've got November 16th at 11.

2          THE COURT:  Okay.

3          THE DEPUTY CLERK:  And you guys will let me know when

4    I need to order the PSR; correct?

5          MS. TEKEEI:  Yes, we will.

6          THE DEFENDANT:  What's a PSR?

7          THE COURT:  PSR is a presentence investigative report

8    conducted by probation.  So on every defendant or almost every

9    defendant, the probation department of this court will do an

10   investigation and report to me, with copies to your counsel,

11   about aspects of your prior history, your family, your work

12   history, everything that's relevant to the sentencing.

13         THE DEFENDANT:  Thank you, your Honor.

14         THE COURT:  Analysis of the sentencing guidelines.

15   And you'll be interviewed in connection with that.

16         So at this point I want the government to provide a

17   copy of the transcript to the probation officer before the

18   interview; and the probation officer is instructed before the

19   interview to advise defense counsel, so if they wish to

20   (indiscernible).

21         THE DEPUTY CLERK:  Judge, I think you have to do a

22   *Brady* order.

23         THE COURT:  I did a *Brady* order in this case.

24         MS. HELLER:  You have not, your Honor.

25         THE COURT:  Oh, all right.  So we will enter one.

L4DVSILP

1    But the defense, before it pleads guilty, is entitled

2    to a representation by the government that all documents

3    required to be produced under the case of *Brady v. Maryland* and

4    under the *Jencks* Act and under Rule 16, have, in fact, been

5    produced.  Do you so represent?

6    MS. TEKEEI:  Your Honor, the government, just to be

7    clear, has not produced discovery to Mr. Silver because of his

8    express intention to enter a guilty plea pursuant to the

9    cooperation agreement with the government and to the filing of

10    an information.  Nonetheless, we are not aware of any *Brady*

11    material or information that Mr. Silver does not already

12    possess.

13    THE COURT:  They not already possess.

14    Is it the government's obligation to produce those

15    documents?

16    MS. TEKEEI:  Certainly, your Honor.  My apologies.

17    THE COURT:  All *Brady* documents, all *Giglio* documents?

18    MS. TEKEEI:  It is, your Honor.

19    Let me just be clear.  And I think counsel for

20    Mr. Silver can also confirm.  We are not aware of any *Brady*

21    material or information with respect to Mr. Silver.

22    THE COURT:  Or *Giglio*.

23    MS. TEKEEI:  That's correct, your Honor.

24    THE COURT:  Defense counsel?

25    MS. HELLER:  Your Honor, we, of course, don't have

L4DVSILP

1    access to *Giglio* materials; but we do have access to a large

2    amount of materials related to the case.  And based on our

3    access to those materials, your Honor, we aren't aware of any

4    *Brady* materials.

5              THE COURT:  It has not been produced.

6              MS. HELLER:  We haven't received any productions from

7    the government.

8              THE COURT:  Is that sufficient?

9              MS. TEKEEI:  I'm sorry, I didn't catch that, your

10   Honor.

11             THE COURT:  Is that sufficient?

12             MS. TEKEEI:  Yes, your Honor.

13             THE COURT:  Just to be clear, the government is

14   representing that all *Brady* material has been produced --

15   including *Giglio* material, has been produced to the defendant

16   or steps have been taken to assure that the defense has what

17   would be all *Brady* and *Giglio* material.  Is that your

18   representation?

19             MS. TEKEEI:  Your Honor, because we have not produced

20   any material to Mr. Silver, I can't say that we have produced

21   all *Brady* or *Giglio* material.  However, we have reviewed our

22   file, including our interviews of other -- of witnesses and

23   other investigative files in this case, and we are not aware of

24   any *Brady* or *Giglio* material with respect to Mr. Silver.

25             THE COURT:  Okay.  You so represent.

L4DVSILP

1    MS. TEKEEI:  Yes, your Honor.

2    THE COURT:  Okay.  You're familiar with the terms of

3    the *Brady* order that's been used in the court?

4    MS. TEKEEI:  Yes, your Honor.

5    THE COURT:  And would you say that you comply with it?

6    MS. TEKEEI:  Yes, your Honor.

7    THE COURT:  Okay.

8    Again, I accept the plea as voluntary.  Mr. Silver

9    understands the consequences, and there is an independent

10   basis-in-fact to support the plea.  I accept the plea of

11   guilty.  The clerk will enter a plea of guilty to each of the

12   three counts.

13   We have a date for sentencing.  I think we've covered

14   everything, so --

15   THE DEPUTY CLERK:  No, Judge.  Bail.

16   THE COURT:  What is it?

17   THE DEPUTY CLERK:  Bail.  They need to issue an order

18   for bail.

19   THE COURT:  What's the situation with bail?

20   MS. TEKEEI:  Your Honor -- sorry, I don't mean to

21   interrupt the Court.

22   The parties have a proposal, a joint proposal, for the

23   Court's consideration that I'm happy to outline now.

24   THE COURT:  Why are you waiting?

25   MS. TEKEEI:  Your Honor, I actually just wanted to

L4DVSILP

1    confirm with my (indiscernible) list that I get all of them

2    correct; and I was just making sure I have the correct page in

3    front of me, your Honor.

4          The first term of the bail proposal, the first

5    condition is a $500,000 personal recognizance bond cosigned by

6    two financially responsible persons; travel restricted to the

7    District of New Jersey, the Southern District of New York, the

8    District of Connecticut, and the Southern District of Florida;

9    surrender of all travel documents, including passports --

10          THE COURT:  Did you include the Eastern District?

11          MS. TEKEEI:  I did not, but we have no objection if

12   that is a standard condition the Court would like to include.

13          MS. HELLER:  Yes, we would request that, your Honor.

14          Thank you.

15          THE COURT:  I mean, if he's going to a restaurant in

16   Brooklyn, you don't want him to be violated.

17          THE DEFENDANT:  Thank you, your Honor.

18          THE COURT:  The geographical limitation is New Jersey,

19   Connecticut, the Southern District of New York, and the Eastern

20   District of New York.

21          MS. TEKEEI:  And also the Southern District of

22   Florida.

23          Surrender of all travel documents, including a

24   passport, and no new travel documents; pretrial services

25   supervision as directed by pretrial services; reporting to the

L4DVSILP

1    United States Marshals Service at 500 Pearl Street today,

2    immediately after this proceeding for arrest processing;

3    release on Mr. Silver's own signature today, with the remaining

4    conditions to be met by April 21st; and --

5              THE COURT:  You say that Mr. Silver signed the

6    $500,000 bond today, but doesn't have to provide the

7    financially responsible people until when?

8              MS. TEKEEI:  It's a $500,000 bond, your Honor.

9              THE COURT:  500,000.

10             MS. TEKEEI:  To be signed --

11             (Indiscernible crosstalk)

12             THE COURT:  -- responsible people -- has to be

13   supplied by when?

14             MS. TEKEEI:  Yes, your Honor.

15             THE COURT:  By when?

16             MS. TEKEEI:  April 21st.

17             THE COURT:  April when?

18             MS. TEKEEI:  21.

19             THE COURT:  Okay.

20             MS. TEKEEI:  Refraining from any contact with any

21   known co-conspirators, unless in the presence of counsel; and

22   refraining from the conduct alleged in the charging instrument.

23             THE COURT:  Are those accepted by the defense?

24             MS. HELLER:  Yes, your Honor, they are.

25             And we would have one additional request, that his --

L4DVSILP

1    it doesn't need to be written into the bond, but that we would

2    ask your Honor for Mr. Silver and his wife have a preplanned

3    trip to South Carolina that was planned for between April 29th

4    and May 15th of this year.  So we would ask the Court's

5    permission for Mr. Silver to travel to the District of South

6    Carolina for that two-week period.

7          THE COURT:  Permission is granted on condition that he

8    supply in advance the details of his flights and locations to

9    the (indiscernible).

10         MS. HELLER:  Yes.  They'll be driving, and we'll

11   provide all of those details to probation.

12         THE COURT:  Okay.

13         And does probation know about -- whereabouts in the

14   Southern District of Florida?

15         MS. HELLER:  Mr. Silver and his wife occasionally will

16   travel to the area of Miami, to the area of Surfside, to the

17   area of Palm Beach; but there are no current plans scheduled.

18   If those plans are scheduled, Mr. Silver will notify his

19   probation officer.

20         THE COURT:  So any flights to the Southern District of

21   Florida will be preceded and conditioned upon giving the

22   pertinent itinerary and location information to the probation

23   department.

24         MS. HELLER:  Yes, your Honor.

25         Mr. Silver will do that.

L4DVSILP

1          THE COURT:  Okay.  Anything else?

2          MS. HELLER:  Nothing from defense.

3          THE DEPUTY CLERK:  Can you guys submit a bail order so

4    I can send to magistrate's, so they'll have it when he gets

5    there?

6          MS. TEKEEI:  Yes.

7          THE DEPUTY CLERK:  Just send me an email with the

8    order.

9          MS. TEKEEI:  No problem.

10         THE COURT:  All right.  Is there anything else?

11         Government, anything else?

12         Does the government have anything else?

13         MS. TEKEEI:  No, not from the government.

14         No, your Honor.

15         THE COURT:  Defense have anything else?

16         MS. HELLER:  We do not, your Honor.

17         Thank you very much.

18         THE COURT:  Okay.  The bail package is so-ordered.

19         Thank you, all.  Good-bye.

20                          *    *    *

21

22

23

24

25